USCA1 Opinion

 

 March 19, 1993 UNITED STATES COURT OF APPEALS For The First Circuit _________________________ No. 92-2104 EDWARD McANDREWS, AS TRUSTEE OF IYANOUGH REALTY TRUST, Plaintiff, Appellant, v. FLEET BANK OF MASSACHUSETTS, N.A., ET AL., Defendants, Appellees. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ _________________________ Edward R. Wiest, with whom Edward D. Tarlow and Tarlow, _________________ _________________ _______ Breed, Hart, Murphy & Rodgers, P.C. were on brief, for appellant. ___________________________________ Leonard G. Learner and Hutchins, Wheeler & Dittmar, P.C. on ___________________ _________________________________ brief for appellee Fleet Bank of Massachusetts, N.A. S. Alyssa Roberts, Attorney, with whom Ann S. DuRoss, ___________________ _______________ Assistant General Counsel, and Richard J. Osterman, Jr., Senior _________________________ Counsel, were on brief, for appellee Federal Deposit Insurance Corporation. _________________________ March 19, 1993 _________________________ SELYA, Circuit Judge. A property owner appeals from a SELYA, Circuit Judge. _____________ ruling that keeps intact a bank's lease notwithstanding both the bank's failure and a clause in the lease ostensibly permitting the landlord to opt out upon the tenant's insolvency. Because enforcing the lease despite the termination-upon-insolvency clause comports with the provisions of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. No. 101-73, 103 Stat. 183 (codified as amended in scattered sections of 12 U.S.C.), and because such enforcement constitutes neither a retroactive application of the newly enacted statute nor an unconstitutional taking of appellant's property, we affirm the judgment below. I. BACKGROUND I. BACKGROUND In 1986, plaintiff-appellant Edward McAndrews, in his capacity as trustee of the Iyanough Realty Trust, purchased real estate situated at 375 Iyanough Road, Hyannis, Massachusetts (the Hyannis property). At the time, the premises were under lease to Merchants Bank & Trust Company of Cape Cod. The lease, executed in 1969, provided for a 20-year term with a 20-year renewal option. After appellant acquired the Hyannis property, the Bank of New England (BNE) merged with Merchants Bank and seasonably exercised the option. Subsequently, Congress enacted FIRREA, thus providing a mechanism to deal with financially distressed banks in a manner that preserves their going concern value and enhances the prospects of orderly administration during troubled times. 2 FIRREA includes a provision allowing the Federal Deposit Insurance Corporation (FDIC), as receiver, to enforce contracts previously entered into by failed banks notwithstanding contractual provisions designed to guard against exactly that eventuality. See 12 U.S.C. ___ 1821(e)(12)(A) (Supp. III 1991).1 This section has particular pertinence in the present situation since the Hyannis lease contains a termination-upon-insolvency clause (which we shall call an ipso facto clause) permitting the lessor to abrogate the ____ _____ lease if any regulatory authority, such as the FDIC, takes over the tenant bank.2 FIRREA was effective on the date of its enactment, viz., August 9, 1989. See Demars v. First Serv. Bank for Sav., ____ ___ ______ _________________________ ____________________ 1The statute provides in relevant part that the FDIC, qua ___ receiver, may enforce any contract . . . entered into by the depository institution notwithstanding any provision of the contract providing for termination, default, acceleration, or exercise of rights upon, or solely by reason of, insolvency or the appointment of a conservator or receiver. 12 U.S.C. 1821(e)(12)(A). 2The ipso facto clause is embodied in section 6.1 of the ____ _____ lease. It states: If . . . the Lessee is closed or taken over by the banking authority of the Commonwealth of Massachusetts or other bank supervisory authority, . . . the Lessor lawfully may immediately or at any time thereafter and without demand or notice, enter upon the premises or any part thereof in the name of the whole, and repossess the same . . . and expel the Lessee . . . . 3 907 F.2d 1237, 1238-39 (1st Cir. 1990). Seventeen months thereafter, BNE failed. The FDIC was appointed as receiver on January 6, 1991. It organized a so-called bridge bank, see 12 ___ U.S.C. 1821(n)(1)(A) (Supp. III 1991), named it New Bank of New England (NBNE), and assigned the leasehold interest in the Hyannis property to it. See 12 U.S.C. 1821(n)(3)(A) (Supp. III ___ 1991). When appellant, relying on the lease's terms, served NBNE with a notice to quit, the bank stood fast, asserting that FIRREA rendered the ipso facto clause unenforceable. ____ _____ Appellant then sought a declaration of rights in federal district court, naming NBNE and FDIC as defendants.3 He argued that section 1821(e)(12)(A) should only be applied to leases executed after FIRREA's effective date. In appellant's view, applying the statute to a preexisting lease containing an ipso facto clause effectively nullifies the clause, therefore ____ _____ constituting an improper retroactive application of the statute; and, moreover, effects a taking without compensation in violation of the Fifth Amendment. The district court rejected these twin asseverations and granted summary judgment in defendants' favor. See McAndrews ___ _________ v. New Bank of New England, 796 F. Supp. 613, 616 (D. Mass. _________________________ 1992). McAndrews appeals. II. RETROACTIVE APPLICATION II. RETROACTIVE APPLICATION It is a settled rule that courts should not apply ____________________ 3In July 1991, Fleet Bank of Massachusetts purchased NBNE's leasehold interest in the Hyannis property. Fleet has replaced NBNE as a defendant and appellee. 4 statutes retroactively when doing so would significantly impair existing substantive rights and, thus, disappoint legitimate expectations. See, e.g., Bradley v. Richmond Sch. Bd., 416 U.S. ___ ____ _______ _________________ 696, 711 (1974); FDIC v. Longley I Realty Trust, ___ F.2d ___, ____ _______________________ ___ (1st Cir. 1993) [No. 92-1770, slip op. at 5]; C.E.K. Indus. _____________ Mechanical Contractors, Inc. v. NLRB, 921 F.2d 350, 358 n.7 (1st _____________________________ ____ Cir. 1990); cf. American Trucking Ass'ns v. Smith, 110 S. Ct. ___ _________________________ _____ 2323, 2338 (1990) (explaining retroactivity principles in respect to judge-made law). In the instant case, appellant posits that applying section 1821(e)(12)(A) to trump a preexisting escape clause must be considered a retroactive application of FIRREA and, as such, improper. We do not agree. The determination of whether a statute's application in a particular situation is prospective or retroactive depends upon whether the conduct that allegedly triggers the statute's application occurs before or after the law's effective date. Hence, a statute's application is usually deemed prospective when it implicates conduct occurring on or after the effective date. See Cox v. Hart, 260 U.S. 427, 434-35 (1922); EPA v. New Orleans ___ ___ ____ ___ ___________ Pub. Serv., Inc., 826 F.2d 361, 365 (5th Cir. 1987); see also ________________ ___ ____ Allied Corp. v. Acme Solvents Reclaiming, Inc., 691 F. Supp. _____________ ________________________________ 1100, 1110 (N.D. Ill. 1988); King v. Mordowanec, 46 F.R.D. 474, ____ __________ 482 (D.R.I. 1969). Even when the later-occurring circumstance depends upon the existence of a prior fact, that interdependence, without more, will not transform an otherwise prospective application into a retroactive one. See New York Cent. & Hudson ___ _______________________ 5 River R.R. Co. v. United States (No. 2), 212 U.S. 500, 505-06 _______________ ______________________ (1909) (holding that a statute prohibiting rebates could validly be applied to a rebate paid after the act's effective date with respect to property transported before the act's effective date); Gonsalves v. Flynn, 981 F.2d 45, 48-49 (1st Cir. 1992) (holding _________ _____ that an amendment to a tolling provision operates prospectively when it bars a suit filed after its enactment, even if the claim accrued before the law changed). Phrased another way, a statute does not operate retroactively simply because its application requires some reference to antecedent facts. See Cox, 260 U.S. ___ ___ at 435; see also New Orleans Pub. Serv., 826 F.2d at 365 ("A law ___ ____ ______________________ is not made retroactive because it alters the existing classification of a thing."). This means, of course, that a statute may modify the legal effect of a present status or alter a preexisting relationship without running up against the retroactivity hurdle. The key lies in how the law interacts with the facts. So long as a neoteric law determines status solely for the purpose of future matters, its application is deemed prospective. See New Orleans ___ ____________ Pub. Serv., 826 F.2d at 365. __________ Employing these first principles, FIRREA's reach in this case cannot be deemed retroactive. Signing a lease containing an ipso facto clause does not in itself unleash ____ _____ section 1821(e)(12)(A). Only subsequent events can pull the trigger. Here, for example, FIRREA was brought into play through a collocation of circumstances, all occurring well after the 6 law's effective date: the tenant's insolvency, the FDIC's appointment as receiver, and the landlord's attempt to utilize the lease's escape hatch. It follows that, because the conduct triggering the statute's application occurred long after FIRREA's enactment, using section 1821(e) to trump the ipso facto clause ____ _____ constitutes a prospective use of the statute regardless of when the lease was executed.4 Any other result would twist FIRREA's structure, do violence to its clear language, and needlessly frustrate Congress's intent to "deal expeditiously with failed financial institutions." H.R. Conf. Rep. No. 101-222, 101st Cong., 1st Sess. (1989), reprinted in 1989 U.S.C.C.A.N. 432. _________ __ After all, if courts were to construe FIRREA so as to shield from its grasp all claims arising from contracts formed before FIRREA's enactment, Congress's efforts to protect the public from existing and anticipated bank failures would be hamstrung. ____________________ 4In attempting to buttress its claim of retroactivity, appellant relies on United States v. Security Indus. Bank, 459 _____________ ____________________ U.S. 70 (1982), and Hodel v. Irving, 481 U.S. 704 (1987). Both _____ ______ cases are inapposite. Security Bank stands for the proposition _____________ that an attempted invalidation of liens perfected prior to passage of the Bankruptcy Reform Act constituted a retroactive application of the Act. 459 U.S. at 78-79. That situation would be analogous to, say, an FDIC attempt to undo a landlord's pre- FIRREA eviction of an insolvent bank tenant. That is not the case at bar. Hodel involved a statute forbidding certain _____ testamentary transfers. As applied, the statute operated to extinguish devises originating with individuals who died after the act's effective date. See 481 U.S. at 709. Significantly, ___ the question of whether, as a matter of statutory construction, the act must be deemed to operate retroactively when it implicates wills drawn before the effective date was a non-issue. Rather, the court examined whether the property regulation as applied constituted an unconstitutional taking under the Fifth Amendment. See id. at 713-18. ___ ___ 7 Our conclusion that the district court's use of section 1821(e) did not constitute a retroactive application is fortified by three other pieces of supporting data. The first is the opinion in Hawke Assocs. v. City Fed. Sav. Bank, 787 F. Supp. 423 _____________ ___________________ (D.N.J. 1991). To all intents and purposes, Hawke is squarely on _____ point. There, the court applied section 1821(e)(12)(A) to render unenforceable a lease termination clause similar to the one at issue here. See id. at 426-27. While the parties in Hawke ___ ___ _____ signed the lease nearly two years before FIRREA's enactment, the tenant entered receivership four months after the statute's effective date.5 See id. at 424. ___ ___ Second, we find instructive the caselaw construing section 365(e)(1) of the Bankruptcy Code, 11 U.S.C. 365(e)(1) (1988). Courts have consistently held that section 365, an enactment which renders termination-upon-insolvency clauses unenforceable in bankruptcy, applies to leases predating the Code. See, e.g., Matter of Triangle Lab., Inc., 663 F.2d 463, ___ ____ ______________________________ 467 (3d Cir. 1981) (observing that 365(e)(1) controls "leases . . . executed prior to the effective date of the Code" when "the _____ event which trigger[s] the bankruptcy termination clause occur[s] after the effective date of the Code"); In Re Sapolin Paints, _____ _______________________ ____________________ 5There are other decisions to like effect. In Longley I __________ Realty Trust, ___ F.2d at ___ [slip op. at 8], this court applied ____________ a FIRREA provision codified at 12 U.S.C. 1823(e) to nullify an alleged oral agreement originating before the Act's effective date. In RTC v. Southern Union Co., No. MO-91-CA-120 (W.D. Tex. ___ __________________ July 7, 1992), the Resolution Trust Corporation successfully invoked, inter alia, section 1821(e)(12)(A) to enforce a _____ ____ repurchase agreement that predated FIRREA. 8 Inc., 5 B.R. 412, 414-17 (Bankr. E.D.N.Y. 1980) (nullifying a ____ termination-upon-bankruptcy clause in a lease that predated the Code where the lessee's insolvency occurred after the Code's effective date). We think the analogy between the concinnous use of Code section 365(e)(1) and FIRREA section 1821(e)(1)(A) is a powerful one. Third, we take some modest comfort in the awareness that a variety of FIRREA provisions, albeit provisions of an essentially procedural nature, have been held to affect claims arising out of contracts entered into prior to FIRREA's enactment. See, e.g., Demars, 907 F.2d at 1239 (applying ___ ____ ______ FIRREA's grant of federal jurisdiction to cases pending at the time of enactment); In Re Resolution Trust Corp., 888 F.2d 57, 58 ____________________________ (8th Cir. 1989) (same); Triland Holdings & Co. v. Sunbelt Serv. ______________________ _____________ Corp., 884 F.2d 205, 207 (5th Cir. 1989) (same); see also United _____ ___ ____ ______ Bank v. First Republic Bank Waco, 758 F. Supp. 1166, 1168 (W.D. ____ _________________________ Tex. 1991) (applying FIRREA's administrative claims process to cases pending on FIRREA's effective date). For these reasons, we reject appellant's principal assignment of error, concluding that, by construing section 1821 to trump the lease's preexisting ipso facto clause, the district ____ _____ court carried out a proper prospective application of the statute. III. THE TAKINGS CLAUSE III. THE TAKINGS CLAUSE We move now to appellant's fallback position. He asserts that applying FIRREA to thwart a preexisting termination- 9 upon-insolvency clause violates the Fifth Amendment.6 On this point, appellant argues that his inability to abort the lease and repossess the property notwithstanding the tenant bank's failure destroys his right to the use and enjoyment of the leased premises, thereby effecting an unconstitutional taking without compensation analogous to those arising from various proscribed physical invasions. See, e.g., Lucas v. South Carolina Coastal ___ ____ _____ _______________________ Council, 112 S. Ct. 2886, 2893 (1992); Loretto v. Teleprompter _______ _______ ____________ Manhattan CATV Corp., 458 U.S. 419, 435-38 (1982). We test this ____________________ proposition. The concept of a "taking" within the meaning of the Fifth Amendment defies precise definition.7 Indeed, the Supreme Court has "eschewed the development of any set formula" for determining which property-right infringements constitute compensable takings, relying "instead on ad hoc, factual inquiries into the circumstances of each particular case." ____________________ 6The Fifth Amendment states in part that: No person shall . . . be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation. U.S. Const. amend. V. 7Withal, the court has identified two discrete categories of regulatory takings that, if left uncompensated, constitute unconstitutional takings per se. These categories, which need no ___ __ "case-specific inquiry into the public interest advanced in support of the restraint," are (1) permanent physical invasions and (2) regulations which "den[y] all economically beneficial or productive use of land." Lucas, 112 S. Ct. at 2893. The _____ restriction at issue in this case falls into neither category. 10 Connolly v. Pension Benefit Guar. Corp., 475 U.S. 211, 224 ________ ______________________________ (1986). Three factors that rank paramount in this inquiry are (1) the regulation's "economic impact" on the property owner, (2) the extent to which the regulation interferes with "distinct investment-backed expectations," and (3) the "character" of the interference, that is, whether the governmental action is more akin to a physical invasion or to a necessary readjustment of economic benefits and burdens. Penn Cent. Transp. Co. v. New _______________________ ___ York City, 438 U.S. 104, 124 (1978); accord Connolly, 475 U.S. at _________ ______ ________ 225; Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1005 (1984). ___________ _____________ This trichotomous test compels the conclusion that the alleged infringement here in no way constitutes a compensable taking. We first assess the severity of the economic impact. The hallmark of an unconstitutional taking is, of course, the denial of the "economically viable use of [an owner's] land." Agins v. City of Tiburon, 447 U.S. 255, 260 (1980). Thus, an _____ ________________ infringement that leaves virtually the whole of the owner's possessory rights intact does not constitute a taking. See, ___ e.g., Penn Cent., 438 U.S. at 130-31; Gilbert v. City of ____ __________ _______ ________ Cambridge, 932 F.2d 51, 56 (1st Cir.) (rejecting takings argument _________ where the regulation in question "preserve[d] an economically viable property use to landlords"), cert. denied, 112 S. Ct. 192 _____ ______ (1991). Put another way, "where an owner possesses a full `bundle' of property rights, the destruction of one `strand' of the bundle is not a taking, because the aggregate must be viewed in its entirety." Andrus v. Allard, 444 U.S. 51, 65-66 (1979). ______ ______ 11 The economic regulation involved here deprives appellant only of his right to terminate the lease upon the FDIC's appointment as receiver. He still enjoys all other common-law rights particular to lessors; all other provisions in the lease, including those that allow appellant to terminate the lease for, say, breach of the agreement to pay rent in a timely fashion or breach of the covenant to maintain the premises in good order, remain in full force. FIRREA's application, then, can hardly be said to deprive appellant of anything remotely resembling his entire bundle of rights. What is more, the present tenant, as FDIC's assignee, is not a free rider. It must use the premises only for the purposes permitted in the lease, abide by the lease's covenants, and pay the rent and other emoluments stipulated in the lease. Thus, the only economic harm that befalls appellant from a frustration of the ipso facto clause is whatever anticipatory ____ _____ harm may stem from his lost opportunity to re-rent the Hyannis property at a potentially more lucrative rate. Such a "loss" does not weigh heavily in the constitutional balance. See id. at ___ ___ 66 (observing that "the interest in anticipated gains has traditionally been viewed as less compelling than other property- related interests"). In the circumstances of this case, extinguishing appellant's preexisting right to terminate the lease upon the bank tenant's failure creates only a minimal impairment of appellant's overall rights in the Hyannis property. The second significant factor in determining whether a 12 regulation constitutes a Fifth Amendment taking implicates the extent of the interference with investment-backed expectations. The inquiry into this factor further undermines appellant's position. Although prudent landlords pepper leases with a myriad of provisions designed to guard against worst-case contingencies, landlords nevertheless lease property in the expectation that they will receive the agreed-upon rent, not in the hope that adverse contingencies will materialize and bring contractual safeguards into play. Moreover, considering the pervasive regulation that has long characterized the banking industry, see, ___ e.g., Fahey v. Mallonee, 332 U.S. 245, 250 (1947) ("Banking is ____ _____ ________ one of the longest regulated and most closely supervised of public callings."), no reasonable landlord would anticipate that every provision in a long-term bank lease will remain unaffected by subsequent changes in federal law. Those who deal with firms in regulated industries must expect that their dealings will from time to time be affected by statutory and regulatory changes. See Connolly, 475 U.S. at 227. ___ ________ Given that the reasonable expectation to which a landlord is entitled is an uninterrupted stream of rent at the contract rate, not the future exercise of a termination-upon- insolvency clause, FIRREA cannot be viewed as interfering with a vested property interest, the usurpation of which would require compensation. See Penn Cent., 438 U.S. at 124-25 (observing that ___ __________ 13 government actions, even those which "cause[] economic harm," cannot be considered takings when they do not "interfere with interests that [are] sufficiently bound up with the reasonable expectations of the claimant to constitute `property' for Fifth Amendment purposes"). In the last analysis, FIRREA leaves appellant firmly in possession of the essence of that for which he bargained: a fixed rent for a fixed period. Turning to the third factor, we do not think that the governmental action here at issue resembles a physical invasion. The government, through FIRREA, is not appropriating appellant's property for its own use. Rather, it is altering the future operation of landlords' and tenants' preexisting contractual rights in order to stem the disruption of banking services within communities, lessen the costs of bank liquidation, and restore public confidence in the nation's banking system. In short, FIRREA's role here is to reallocate economic pluses and minuses in what we find to be an apt illustration of the aphorism that "Congress routinely creates burdens for some that directly benefit others." Connolly, 475 U.S. at 223. There is nothing ________ wrong per se with such expressions of legislative will or with ___ __ the readjustments that they produce. In a nutshell, the character of the governmental action strongly favors the appellees' position. The mere fact that future obeisance to the newly enacted law might cause a property owner, as in this case, to forgo an opportunity for gain is no more than a necessary consequence of FIRREA's regulatory regime. 14 Hence, if there is an invasion of a property right at all, it is a tiny invasion of a lambent right, arising "from a public program that adjusts the benefits and burdens of economic life to promote the common good," id. at 225, and, as such, does not ___ constitute a taking. See id.; accord Andrus, 444 U.S. at 65; ___ ___ ______ ______ Penn Cent., 438 U.S. at 124; Usery v. Turner Elkhorn Mining Co., __________ _____ __________________________ 428 U.S. 1, 15-16 (1976); Pennsylvania Coal Co. v. Mahon, 260 _____________________ _____ U.S. 393, 413 (1922). We need go no further. Here, the three integers composing the applicable equation unanimously suggest rejection of appellant's Takings Clause argument. We heed that counsel. IV. CONCLUSION IV. CONCLUSION To recapitulate, applying section 1821(e)(12)(A) to trump the ipso facto clause in the Hyannis lease is a prospective ____ _____ application of FIRREA and, thus, lawful. Furthermore, the resulting impairment of the landlord's right to terminate the lease upon the tenant bank's failure does not infract the Takings Clause. The judgment of the district court must, therefore, be Affirmed. Affirmed. ________ 15