UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WEST LANGLEY CIVIC ASSOCIATION,
*Plaintiff-Appellant,*

v.

No. 00-1875

FEDERAL HIGHWAY ADMINISTRATION,
*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-99-1651-A)

Argued: January 23, 2001

Decided: March 30, 2001

Before WIDENER and TRAXLER, Circuit Judges, and Malcolm J.
HOWARD, United States District Judge for the Eastern District of
North Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Eugene E. Threadgill, McLean, Virginia, for Appellant.
Robert Joseph Black, FEDERAL HIGHWAY ADMINISTRATION,
Washington, D.C., for Appellee. **ON BRIEF:** Helen F. Fahey, United
States Attorney, Jeri Kaylene Somers, Assistant United States Attor-
ney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

This case involves a battle for a noise barrier to protect nearby residents from the constant noise generated by the huge volume of traffic carried on Interstate 495, the "Capital Beltway" encircling Washington, D.C. Appellant West Langley Civic Association (the "Association") is an association of homeowners who live in the West Langley neighborhood of McLean, Virginia, an area that abuts the Beltway. The Association appeals from the grant of summary judgment in favor of the Federal Highway Administration ("FHWA"). We affirm.

### I.

Before approval of a "federal-aid" highway project,[1] the environmental effects of the project (including noise pollution) must be fully considered, *see* 23 U.S.C.A. § 109(h) (West 1990), and adequate measures must be taken to ensure compliance with federal noise level standards, *see* 23 U.S.C.A. § 109(i) (West 1990). When the Beltway was widened to eight lanes in the 1970s, FHWA regulations generally required the use of noise abatement measures, such as concrete walls serving as noise barriers, unless an exception was granted. *See* 23 C.F.R. §§ 772.13 & 772.15 (1977); 23 C.F.R. §§ 772.3 & 772.4 (1973). During the widening of the Beltway, the agency now known as the Virginia Department of Transportation ("VDOT") sought and received an exception that excused it from building a noise barrier between the Beltway and West Langley.

West Langley residents complained about the noise from the expanded Beltway and requested that VDOT construct noise barriers.

---

[1]Broadly speaking, a "federal-aid highway" is a highway eligible for federal assistance under the Federal-Aid Highway Act. *See* 23 U.S.C.A. § 101(a)(5) (West Supp. 2000).

VDOT refused, based on its policy not to "retrofit" existing highways with noise barriers. West Langley residents then began a twenty-year campaign for the barriers, repeatedly seeking the aid of state and federal legislators, commissioning a survey in 1988 that showed a substantial increase in the noise level from the Beltway, and even requesting in 1991 that FHWA withhold highway funding from VDOT until it built a noise barrier. (The FHWA declined, noting that could not force a state agency to undertake any specific course of action.) In 1995, the Association sued the FHWA in connection with its granting of the exception authorizing VDOT to widen the Beltway without constructing a noise barrier in the West Langley area. That action was dismissed on statute of limitation grounds.

Things began looking up for the Association in 1999, when the Virginia General Assembly passed a bill requiring VDOT to construct a noise barrier at West Langley with federal funds. The Association's happiness, however, was short-lived. By the time the Virginia bill was passed, there had been a sea change in the availability of federal funds for projects like the West Langley noise barrier.

Noise abatement projects fall into two categories. Type I projects are those associated with construction of a new federal or federal-aid highway or an alteration of an existing highway, such as the addition of new lanes. *See* 23 C.F.R. § 772.5(h) (2000). Type II projects are those for noise abatement on existing highways. *See* 23 C.F.R. § 772.5(i) (2000). While noise abatement is generally required with Type I projects, Type II projects are not mandatory. *See* 23 C.F.R. § 772.7 (2000). Because no noise barrier was built at West Langley when the Beltway was widened, the barrier sought by the Association is a Type II project.

Prior to 1995, federal-aid funding was available for Type II noise abatement projects proposed by state agencies, *see, e.g.*, 23 C.F.R. § 772.9(c) (1977 ed.), and by 1992 seventeen states had constructed Type II noise abatement projects, *see* 61 Fed. Reg. 45,319, 45,320 (Aug. 29, 1996). In 1995, however, Congress passed the National Highway System Designation Act, which, among other things, severely limited the availability of federal aid for Type II projects:

> (1) GENERAL RULE.—No funds made available out of the Highway Trust Fund may be used to construct Type II

> noise barriers (as defined by section 772.5(i) of title 23, Code of Federal Regulations) pursuant to subsections (h) and (i) of section 109 of title 23, United States Code, if such barriers were not part of a project approved by the Secretary before the date of the enactment of this Act.

> (2) EXCEPTIONS.—Paragraph (1) shall not apply to construction of Type II noise barriers along lands that were developed or were under substantial construction before approval of the acquisition of the rights-of-ways for, or construction of, the existing highway.

*See* National Highway System Designation Act of 1995 § 339(b), Pub. L. No. 104-59, 109 Stat. 568, 605 (1995).[2] In response to the Act, the FHWA amended its regulations to provide that:

> For Type II projects, noise abatement measures will only be approved for projects that were approved before November 28, 1995, or are proposed along lands where land development or substantial construction predated the existence of any highway. The granting of a building permit, filing of a plat plan, or a similar action must have occurred prior to right-of-way acquisition or construction approval for the original highway. *Noise abatement measures will not be approved at locations where such measures were previously determined not to be reasonable and feasible for a Type I project.*

23 C.F.R. § 772.13(b) (2000) (emphasis added).

This regulation was in effect when federal funds were sought for the state-approved West Langley noise barrier. The FHWA refused the funding request. According to the FHWA, VDOT was granted an exception to the Type I noise barrier requirement at the time of the Beltway expansion in the 1970s because the barrier was determined not to be reasonable. The FHWA therefore concluded that regulation

---

[2]According to the Association, the change was a reaction to a television expos characterizing as wasteful the use of taxpayers' money to build noise barriers.

772.13(b) prohibited the use of federal funds for the construction of the West Langley noise barrier. After the FHWA denied the request for federal-aid funds, the Association filed this action in district court.

The Association challenged the first portion of the regulation, which allows funding for Type II projects only if a development was under construction, a building permit obtained, a plat plan filed, or other similar action had occurred "prior to right-of-way acquisition or construction approval for the original highway." 23 C.F.R. § 772.13(b). According to the Association, the FHWA exceeded its statutory authority when promulgating this portion of the regulation because the regulation narrowed the projects for which federal funds could be used by limiting availability to areas where development was begun prior to the right-of-way acquisition or construction of the "*original* highway," while the National Highway System Designation Act referred only to the "*existing* highway."

The Association also challenged the final sentence of regulation 772.13(b), which states that funding will not be available for Type II projects at locations where Type I noise abatement had previously been determined to be not reasonable or feasible. According to the Association, that portion of the regulation is impermissibly retroactive, at least as applied to West Langley, because the decision to deny funds is triggered by an event—the prior determination of the reasonableness and feasibility of Type I noise abatement measures—that happened more than twenty years before the regulation was enacted.

The district court granted summary judgment to the FHWA. The court first concluded that the FHWA's interpretation of the undefined statutory phrase "existing highway" to mean "original highway" was not unreasonable and that the regulation was therefore valid. The court also ruled that the FHWA's decision to deny funding for the requested noise barrier "had a reasonable basis in the record" and therefore could not overturned. J.A. 202. The district court did not specifically address the Association's retroactivity argument.

II.

Although the Association questioned in its brief the FHWA's interpretation of "existing highway" as meaning "original highway," it

abandoned this claim during oral argument. Instead, the Association focused on its claim that the final sentence of regulation 772.13(b) is an impermissible retroactive regulation. Questions about the validity of a regulation are reviewed de novo, *see CSX Corp. v. United States*, 124 F.3d 643, 646 (4th Cir. 1997), but we give substantial deference to an agency's interpretation of its own regulations, unless that interpretation is "plainly erroneous or inconsistent with the regulations," *Zeneca, Inc. v. Shalala*, 213 F.3d 161, 168 (4th Cir. 2000) (internal quotation marks and alteration omitted).

"Retroactivity is not favored in the law . . . [and] congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). We conclude that the challenged portion of regulation 772.13 is not retroactive.

A law or regulation operates retroactively if it "impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). A regulation "does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating [its] enactment, or upsets expectations based in prior law." *Id.* at 269 (internal citation omitted). Nor is a regulation retroactive "because it draws upon antecedent facts for its operation." *Id.* at 270 n.24 (internal quotation marks omitted)); *see also Reynolds v. United States*, 292 U.S. 443, 449 (1934) ("A statute is not rendered retroactive merely because the facts and requisites upon which its subsequent action depends . . . are drawn from a time antecedent to the enactment.").

In this case, the application of regulation 772.13 is triggered by events occurring after its effective date—the construction and request for funding of a Type II noise barrier. *See McAndrews v. Fleet Bank of Mass., N.A.*, 989 F.2d 13, 16 (1st Cir. 1993) ("The determination of whether a statute's application in a particular situation is prospective or retroactive depends upon whether the conduct that allegedly triggers the statute's application occurs before or after the law's effective date."). While the availability of funds depends in part upon an event that occurred years before (the determination that a Type I barrier was not reasonable or feasible), this reference to antecedent

events simply does not make the regulation an impermissible retroactive one. *See Landgraf*, 511 U.S. at 280 n.24; *McAndrews*, 989 F.2d at 16 ("[A] statute does not operate retroactively simply because its application requires some reference to antecedent facts."). Because the regulation governs the availability of federal funds for Type II noise abatement projects begun after the effective date of the regulation, the Association's retroactivity argument fails.

To the extent that the Association's brief can be read as challenging the substance of the FHWA's conclusion that a Type I barrier at the West Langley location had previously been determined to be unreasonable, that argument likewise fails, because the FHWA did not act arbitrarily or capriciously when making that determination. *See* 5 U.S.C.A. § 706(2)(A) (West 1996) (stating that an agency's action must be upheld unless the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.").

When the Beltway was widened in the 1970s, the FHWA granted VDOT an exception from the noise abatement requirements after VDOT's investigation revealed that most West Langley residents favored the use of an earth berm with supplemental planting rather than a noise barrier, even though the berm would be substantially less effective in reducing the noise from the Beltway. According to VDOT's survey of the residents, they preferred the berm because it would leave intact the substantial stand of trees that provided a visual screen from the Beltway, while construction of a noise wall would have required removal of many of the trees. VDOT therefore based its exception request on the residents' lack of support for the construction of a noise barrier.

The Association now contends that VDOT misrepresented the results of the survey to the FHWA and that most of the residents in fact wanted a noise barrier to be built. This argument, however, is nothing more than an attempt to litigate the propriety of the FHWA's granting of the exception, an attempt that is barred under principles of res judicata by the dismissal of the Association's 1995 lawsuit against the FHWA. *See First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters., Inc.)*, 81 F.3d 1310, 1314-15 (4th Cir. 1996) ("Under *res judicata* principles, a prior judgment between the same parties can preclude subsequent litigation

on those matters actually and necessarily resolved in the first adjudication. . . . [Res judicata] bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented." (citations omitted)); *Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1180-81 (4th Cir. 1989) (holding that dismissal based on the expiration of the statute of limitations is a decision on the merits for purposes of res judicata). Accepting as we must that the FHWA properly granted VDOT an exception from the requirement to build a Type I noise abatement project, we cannot say that the FHWA made a clear error of judgment or disregarded the controlling law when it relied on the prior exception to deny funding under regulation 772.13. *See Maryland Dep't of Human Resources v. USDA*, 976 F.2d 1462, 1475 (4th Cir. 1992) ("In determining whether agency action [violates § 706(2)(A) of the APA] . . ., we perform only the limited, albeit important, task of reviewing agency action to determine whether the agency conformed with controlling statutes, and whether the agency has committed a clear error of judgment." (internal quotation marks omitted)).

## III.

We conclude that regulation 772.13 is not retroactive and that the FHWA properly applied the regulation to deny funding for the West Langley noise barrier. Accordingly, the district court's grant of summary judgment in favor of the FHWA is hereby affirmed.

*AFFIRMED*