**FIRST DIVISION
PHIPPS, C. J.,
ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 12, 2014**

# In the Court of Appeals of Georgia

A13A1888. CRE VENTURE 2011-1, LLC v. FIRST CITIZENS JE-093
BANK OF GEORGIA.

ELLINGTON, Presiding Judge.

CRE Venture 2011-1, LLC ("Venture"), appeals from an order of the Superior Court of Fulton County granting the interlocutory injunction sought by First Citizens Bank of Georgia ("Citizens"). This suit concerns a loan participation agreement among multiple lenders, a dispute over which lender has the right to administer the loan and to foreclose on the real property securing the loan, and the effect of the loan having passed through Federal Deposit Insurance Corporation ("FDIC") receivership. Finding no manifest abuse of discretion in the court's decision to grant the interlocutory injunction, we affirm.

When deciding whether to issue an interlocutory injunction, a trial court should consider whether: (1) there is a substantial threat that the moving

party will suffer irreparable injury if the injunction is not granted; (2) the threatened injury to the moving party outweighs the threatened harm that the injunction may do to the party being enjoined; (3) there is a substantial likelihood that the moving party will prevail on the merits of her claims at trial; and (4) granting the interlocutory injunction will not disserve the public interest. The decision whether to grant a request for interlocutory injunctive relief is in the discretion of the trial court according to the circumstances of each case, and we will not disturb the injunction a trial court has fashioned unless there was a manifest abuse of discretion. The purpose for granting interlocutory injunctions is to preserve the status quo, as well as balance the conveniences of the parties, pending a final adjudication of the case. Stated otherwise, an interlocutory injunction is a device to keep the parties in order to prevent one from hurting the other whilst their respective rights are under adjudication.

(Citations and punctuation omitted.) *Grossi Consulting v. Sterling Currency Group*, 290 Ga. 386, 387-388 (1) (722 SE2d 44) (2012).

The relevant facts are as follows. In March 2010, Citizens entered into a contract entitled "Participation Certificate and Agreement" (the "Agreement") with Crescent Bank & Trust Company ("CBT"). Pursuant to the Agreement, Citizens purchased an 11 percent undivided interest – a "share" – in an $8.5 million loan (the "Loan") that CBT originated and made to The Plaza at Suwanee Station, LLC (the

2

"Borrower"). Citizens paid over $900,000 for its share in the Loan. Prior to any default by the Borrower, Citizens was entitled to receive payments under the Agreement from CBT on a "first out" basis until its investment plus interest had been satisfied. Paragraph 12 of the Agreement, entitled "Administration," provides in relevant part:

> A. Loan Servicing. Seller may administer the Loan and any related security and guaranties as though it were the sole owner and holder thereof. Except as provided below, Seller will make all decisions concerning the servicing of the Loan, and any related security and guaranties, acceleration, foreclosure, acquisition of other security or guaranties, deficiency judgments, purchase at foreclosure sales, and administration and disposition of acquired security. Seller will not, without Purchaser's written consent, reduce principal or interest with respect to the Loan or release or allow for the substitution of any Property, outside the normal course of dealing with Borrower so as to substantially reduce the possibility of repayment of the Loan. Seller will not, without Purchaser's written consent, renew, extend, or consent to the revision of the provisions of any note or security documents covered or waive any claim against Obligor.

> B. Seller's Duty to Purchaser. Seller will use the same degree of care in servicing and collecting the loan as it would for its own accounts. Seller will not be liable to Purchaser for any action taken or omitted or for any error in judgment, except for bad faith and willful conduct.

The Agreement contemplated multiple participants in the Loan, and two other lenders (who are not parties to this action) purchased shares of the Loan by executing participation certificates and agreements. Covenant Bank & Trust ("Covenant") purchased a 16 percent interest, and First Commerce Community Bank ("FCCB") purchased an 18 percent interest. CBT retained a majority interest in the Loan.

In late July 2010, the Georgia Department of Banking & Finance closed CBT, and the FDIC was appointed receiver for CBT's assets. In August 2011, the FDIC sold CBT's interest in the Loan to Venture.[1] Prior to the filing of the instant lawsuit, Covenant and FCCB were also declared insolvent and closed by regulators, and the FDIC was appointed receiver for both. The FDIC sold Covenant's interest in the Loan to Stearns Bank N.A. ("Stearns"). It sold FCCB's interest in the Loan to Community & Southern Bank ("C&S"). Thus, of those currently holding shares in the Loan, Citizens is the only remaining original participant to the Agreement.

The Loan is secured in part by commercial real property in Gwinnett County, and the Borrower is in default. In January 2012, a few months after Venture acquired its interest in the Loan from the FDIC, Citizens learned that Venture intended to

---

[1] The record does not contain a complete copy of the instrument by which Venture purchased and assumed the assets of CBT from the FDIC.

foreclose on the property, and it filed a prior action to enjoin the sale. At that time, the parties attempted to negotiate a settlement, and Citizens dismissed the suit without prejudice. In mid-2012, Venture, C&S, and Stearns agreed that foreclosing on the property was the best way of maximizing their recovery on their investment in the Loan. Only Citizens objected to foreclosure, arguing that, based on its analysis, that the best way to recover on the Loan would be to work with the Borrower to improve the property and to lease the commercial space, thereby facilitating the Borrower's ability to repay and increasing the value of property.

In October 2012, Venture began advertising a foreclosure sale of the property scheduled for November 2012. Venture asserted that it had the exclusive right, pursuant to the Agreement and as successor-in-interest to CBT, to administer the Loan and to make all decisions concerning foreclosure. On October 25, 2012, Citizens filed the instant suit against Venture and sought to enjoin Venture's efforts to foreclose. In support of its motion for declaratory and interlocutory injunctive relief, Citizens submitted an affidavit stating that, if the foreclosure went forward, Citizens would lose most of its interest in the loan and would be forced to account for the sale "in a manner that [would] do serious and irreparable harm to [Citizens'] finances and business prospects." According to Citizens, unlike Stearns and C&S, it

has not entered into a loss-sharing agreement with the federal government. Moreover, Citizens argues that Venture purchased the Loan at a significant discount and would not suffer the same loss, and it may even profit from a quick sale of the property.

On the day of the hearing on its motion for a temporary restraining order, Citizens amended its complaint to allege that CBT's insolvency triggered an "ipso facto"[2] provision in the Agreement that authorized the removal of CBT as administrator of the Loan. Paragraph 20 (A) of the Agreement, entitled "Removal of Seller as Administrator," provides that the Seller may be removed as administrator under the following circumstances:

A. Qualifying Events. Upon the occurrence of any of the following events, Purchaser may notify Seller and assume the administration of the Loan and related guarantees and security agreements as well as demand any documentation or writings reasonably necessary to evidence proof of Purchaser's security interest and perfection.

(1) Seller fails to comply with Seller's fiduciary, contractual or legal obligations as provided under this Agreement or by state or federal law.

(2) Seller petitions for or becomes subject to bankruptcy.

---

[2] "An ipso facto clause is a clause that provides the consequences if a certain event occurs." *Iberiabank v. Beneva 41-1, LLC*, 701 F.3d 916, n. 5 (11th Cir. 2012).

(3) Seller commits any act of insolvency.

(4) Seller is declared insolvent, is taken over, or otherwise closed by a governmental regulatory agency which has jurisdiction over Seller.

Paragraph 20 (B) of the Agreement sets out the procedure to be followed in the event the administrator is removed and there are multiple participants to the Loan.

> Multiple Participants. In the event of multiple participants in the Loan, the participating lender with the then largest share will have the option to assume administration. If any participant possessing this option does not exercise its right upon the demand of the other participants, the option will then pass to the participant with the next largest share. Unless otherwise agreed, participants possessing equal shares in the Loan will share equally in administration.

Paragraph 20 (C) of the agreement also provides, in relevant part, that "[u]nless otherwise agreed, all remaining terms of the agreement will survive Seller's removal as administrator until Purchaser's investment is satisfied in full or the Loan is repurchased by Seller as provided in this agreement."

At the hearing on Citizens's motion for a temporary restraining order, counsel for Citizens argued that, since the original administrator of the Loan (CBT) and the other two original participants (Covenant and FCCB) had all been closed by

regulators, Citizens, as the only original participant remaining, was entitled to administer the Loan pursuant to the Agreement. The superior court found Citizens' reasoning persuasive and entered a temporary restraining order on November 2, 2012, enjoining Venture from foreclosing on the Property and setting a hearing on Citizens' Motion for Interlocutory Injunction for December 7, 2012. After hearing additional arguments, the superior court, on April 3, 2013, granted Citizens's motion for an interlocutory injunction and prohibited Venture from foreclosing on the Property pending the resolution of Citizens' claims for declaratory judgment. This appeal followed.

In related claims of error, Venture argues that the trial court erred as a matter of law in granting an interlocutory injunction because Citizens cannot prevail on the merits of its claims. Venture argues that the loan administration provisions of the Agreement are unenforceable against it as the successor-in-interest to the FDIC, citing 12 USC § 1821 (e) (13) (A). Alternatively, Venture argues, inter alia, that if those provisions of the Agreement are enforceable, there was no event that triggered Venture's removal as administrator.[3]

_____

[3] Venture also argues in the alternative that Citizens lost the right to assume the role administrator through laches. This argument is without merit, however, given that Citizens is seeking declaratory relief. Although an injunction is an equitable

8

We note that the parties and the court below are proceeding under the assumption that Venture stands in the shoes of CBT with respect to the Agreement and is bound by its terms.[4] In fact, Venture claims that its exclusive right to foreclose on the Loan derives from the Agreement. Consequently, in reviewing the propriety of the interlocutory injunction, the primary questions before us are whether the administrator replacement provisions of the Agreement have been triggered and whether Citizens or Venture is entitled to assume sole responsibility for the administration of the Loan. These are questions of contract interpretation.

---

remedy, the court's grant of an interlocutory injunction in this case is "secondary to the primary legal issue of whether the trial court properly construed a contract between the parties." *VATACS Group, Inc. v. HomeSide Lending, Inc.,* 281 Ga. 50, 50-51 (635 SE2d 758) (2006). Citizens is seeking a declaration of its rights under the Agreement, including its right to administer the Loan. "It is a longstanding and well-established rule that the doctrine of laches is an equitable defense which is not applicable to actions at law, which include declaratory judgment actions." (Citations omitted.) Id. at. 50-51.

[4] We note that "a party entering into a purchase and assumption agreement with the FDIC assumes the failed bank's liabilities only to the extent called for in the contract." *Ala. Dept. of Revenue v. FDIC*, 840 FSupp.2d 1305, 1309 (M.D. Ala. 2012). See also *Sec. State Bank of Hibbing v. FDIC*, 2013 U.S. Dist. Lexis 141271 (D. Minn., Sept. 30, 2013) ("Merely because [a bank] assumed the assets underlying the Loan Participation Agreement does not mean that [it] also assumed the breach-of-contract liability [the predecessor bank] incurred before the receivership.").

9

If the language of a contract is clear and unambiguous, "the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning." (Citation and punctuation omitted.) *City of Baldwin v. Woodard & Curran, Inc.*, 293 Ga. 19, 30 (3) (743 SE2d 381) (2013). In this case, the superior court correctly found that the Loan administrator's authority under the Agreement is

> expressly limited by provisions of the Agreement requiring the Administrator to administer the credit with the same care as it would its own account, requiring written consent for decisions that "substantially reduce the possibility of repayment of the loan," and allowing participants to remove the administrator and assume control of the administration of the Loan in cases of an insolvency or takeover by a government regulator or administrator.

Indeed, in this case, all three of the original participant banks, except for Citizens, were declared insolvent and taken over by the FDIC. Under the plain language of Paragraph 20 (A) of the Agreement, that qualifying event authorized Citizens to notify the Seller – that is, Venture, as CBT's successor – and to assume the administration of the Loan. And, Paragraph 20 (B) clearly provides that, if all of the other participating lenders have been declared insolvent, then the option to assume administration of the Loan passes to the remaining participant, Citizens. The agreement does not require Citizens to assume administration, but provides that it

may do so at its option. And Citizens, by filing the instant lawsuit seeking a declaration of its rights pursuant to the Agreement, has expressed its desire to administer the Loan.

Venture argues, however, that Citizens may not enforce the terms of the Agreement concerning the administration of the Loan and remove it as administrator because to do so would contravene federal law, citing 12 USC § 1821 (e) (13) (A) (2006).[5] That statute provides, in relevant part:

> The conservator or receiver may enforce any contract . . . entered into by the depository institution notwithstanding any provision of the contract providing for termination, default, acceleration, or exercise of rights upon, or solely by reason of, insolvency or the appointment of or the exercise of rights or powers by a conservator or receiver.

Venture's reliance on this provision of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989[6] ("FIRREA"), Pub. L. No. 101-73, 103 Stat. 183

---

[5] Prior to 2006, the text of this provision was contained in 12 USC § 1821 (e) (12) (A).

[6] FIRREA "was enacted to strengthen regulation of the nation's financial system in the wake of the savings and loan crisis of the 1980s," and "[i]t grants the FDIC broad powers under 12 USC § 1821 to manage the affairs of insolvent banks as receiver or conservator." *Iberiabank v. Beneva 41-I, LLC*, 701 F3d 916, 921 (11th Cir. 2012).

(codified as amended in scattered sections of 12 USC), is misplaced. "[The section] applies only when *the FDIC* seeks to prevent *termination* of a contract by reason of insolvency, not when the parties, including the FDIC, seek to enforce it." (Emphasis supplied.) *People's Heritage Savings Bank v. New Heritage Holdings*, No. 93-10169-Z, 1994 U.S. Dist. LEXIS 8655 (D. Mass. April 29, 1994). In this case, Venture seeks to enforce the terms of the Agreement to obtain the benefit of CBT's position as lead bank; similarly, Citizens seeks to enforce the terms of the Agreement to assume the role of administrator and to protect its investment in the Loan. Neither party seeks to terminate the Agreement; rather, they both seek to enforce it to their advantage. If Citizens successfully replaces Venture as administrator, Venture remains a party to the Agreement with rights to the Loan.

Venture also argues that the loan administration provisions of the Agreement are unenforceable against it as an assignee of the FDIC, citing *Devonshire Park, LLC v. FDIC*, 2010 U.S. Dist. LEXIS 143602 (M.D. Fla., July 23, 2010). We are not persuaded that the *Devonshire* case, however, stands for the proposition that Venture – a purchaser of an asset from the FDIC – has the same right to repudiate the terms of an agreement that the FDIC enjoys by virtue of its status as receiver and conservator of a failed bank's assets. In *Devonshire*, a loan participant sought to take

12

over administration of a loan while the loan was still in FDIC receivership, not after it had been purchased. The *Devonshire* case does not address whether a party who has purchased an asset from the FDIC may rely on 12 USC § 1821 (e) (13) (A) to avoid the terms of any contractual liabilities it may have assumed along with the asset that it purchased.

Finally, Venture's reliance on *Iberiabank v. Beneva 41-1, LLC*, 701 F.3d 916, is also misplaced. In that case, Iberiabank, as the successor-in-interest to a failed bank, argued that it had the authority to enforce a sublease, an asset that it had purchased and assumed from the FDIC, despite the presence of a clause in the sublease that triggered its termination upon the event of the failed bank's insolvency. Id. at 922 (B). In upholding a grant of summary judgment in Iberiabank's favor, however, the court expressly stated that it did not agree with the proposition that "Iberiabank was attempting to enforce the contract," nor did it adopt the reasoning that Iberiabank could do so as the FDIC's successor-in-interest pursuant to 12 USC § 1821 (e) (13) (A). 701 F.3d at 922 (A). Rather, the court held that *the FDIC* had enforced the terms of the sublease while the sublease was in receivership because the sublease was an asset of the failed bank. As the court explained:

13

In assuming the sublease and subsequently transferring it to Iberiabank, the FDIC was acting within its power to take charge of [the failed bank's] assets, to transfer those assets, and to enforce contracts entered into by [the failed bank.] The termination clause in the sublease purporting to allow termination on transfer of [the failed bank's] assets would have been triggered by the FDIC's takeover of [the failed bank's] assets. The FDIC, however, had the power to enforce the lease notwithstanding clauses to the contrary. It must have enforced the sublease when it transferred [the] assets to Iberiabank; otherwise, the option to lease the occupied premises would have been meaningless. Without the leased premises, the value of [the failed bank's] assets would have decreased. The FDIC was thus carrying out its duty under FIRREA to maximize the value of failed banks when it entered into the Purchase and Assumption Agreement and enforced the sublease.

Id. at 923 (B).

In this case, the asset at issue is the Loan. The parties have not taken the position that the Agreement constitutes an asset. Rather, they agree that it is a contractual obligation concerning their respective shares in the underlying asset, the Loan, and the method by which that asset is to be administered and its proceeds distributed. Moreover, in this case, unlike *Iberiabank*, enforcing the administration terms of the Agreement will not necessarily diminish the value of the failed bank's assets; rather, it is possible, as Citizens argues, that its administration of the Loan may

14

increase its value to all parties to the Agreement. As the court below noted in this case, Citizens' suit is not against the FDIC nor is it an attempt to terminate the agreement or to restrain the FDIC from exercising any of its regulatory powers; rather, Citizens seeks to enforce its right to administer the Loan, a right which is "an essential element of the balance of risk entered into and contemplated by the parties at the time [they executed] the Agreement."

Given the record in this case, we cannot say that the superior court manifestly abused its discretion in granting the interlocutory injunction. The record supports a finding that Citizens will lose some of the value of its investment if Venture is allowed to foreclose. The record also contains evidence supporting the court's finding that the harm to Citizens from the foreclosure outweighs any harm that the injunction will cause to Venture, given that Venture bought CBT's share of the Loan at a discount. And, given the plain language of the Agreement, there is a substantial likelihood that Citizens will prevail on the merits of its claim for declaratory judgment below. Finally, granting the interlocutory injunction will not disserve the public interest. As the superior court found, Citizens' suit and the interlocutory injunction do not restrain the FDIC from exercising its regulatory powers; rather, the injunction protects a Georgia community bank from financial loss by preserving the

status quo pending the resolution of its claims for declaratory relief. Consequently, we affirm the order of the trial court granting the interlocutory injunction.

*Judgment affirmed. Phipps, C. J., concurs. Branch, J., concurs in judgment only.*